UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

CHOOSECO LLC,                          :
        Plaintiff and                  :
        Counter Defendant,             :
                                       :
             v.                        :        File No. 1:07-CV-159
                                       :
LEAN FORWARD MEDIA LLC,                :
        Defendant and                  :
        Counter Claimant.              :
_____:


RULING ON COUNTER DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE
(Papers 103 and 114)

I.    Introduction

        Plaintiff Chooseco initiated this lawsuit seeking a

declaratory judgment that it lawfully terminated its contract

with Defendant Lean Forward Media ("LFM").  LFM has asserted a

number of counterclaims seeking damages for Breach of Contract,

Fraud, Tortious/Intentional Interference with Prospective

Economic Advantage, Unjust Enrichment, Trade Disparagement, and

Breach of the Implied Covenant of Good Faith and Fair Dealing.

(Paper 13.)  Chooseco now moves for summary judgment dismissing

LFM's counterclaims on the theory that LFM has not offered any

proof of damages, a core element of each counterclaim.  Chooseco

also moves to strike certain evidence cited in LFM's Summary

Judgment Opposition papers.

1

For the following reasons, Chooseco's Motion for Summary
Judgment dismissing LFM's counterclaims (Paper 103) is DENIED.
Chooseco's Motion to Exclude Michelle Crames' testimony as
evidence on the market value of LFM's Choose Your Own Adventure
("CYOA") rights is GRANTED.  Chooseco's Motion to Strike (Paper
114) is GRANTED in part and DENIED in part.

II.  Discussion

A.  Motion for Summary Judgment

Summary judgment is appropriate only if there are no genuine
issues of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Rule 56(c)
mandates the entry of summary judgment, after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an essential
element to that party's case, and on which that party will bear
the burden of proof at trial."  Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986).

Chooseco claims summary judgment should be entered against
LFM on its counterclaims because LFM has failed to establish a
genuine issue of material fact on damages, an essential element
of LFM's counterclaims.  Chooseco argues LFM's damages claims are
fatally flawed because (1) LFM failed to plead special damages;
(2) LFM's expert, Monica Dodi, is not qualified to offer
testimony; (3) Dodi's expert testimony is unreliable; (4) Dodi's

2

report does not meet the minimum standards under Rule
26(a)(2)(B); (5) LFM CEO Michelle Crames is also not qualified to
testify; (6) LFM's proof of lost market value is insufficient;
and (7) LFM cannot, in the alternative, claim reliance damages.

### 1. Failure to Plead Special Damages

Under Federal Rule of Civil Procedure 9(g), items of special
damages "must be specifically stated" in the pleading. Special
damages include lost market value, the claim LFM advances.
Command Cinema Corp. v. VCA Labs, Inc., 464 F. Supp. 2d 191, 201
(S.D.N.Y. 2006). Chooseco contends LFM offered its theory of
lost market value damages only after discovery and depositions
had been completed and after Chooseco filed its Motion for
Summary Judgment. According to Chooseco, such "trial by ambush"
is impermissible and highly prejudicial.

The Court disagrees. LFM made several references in its
counterclaim to negotiations with Nina Jacobson, the head of
Color Force, who "was interested in acquiring" LFM's CYOA rights.
See LFM Countercl. ¶¶ 26, 43, 70 (Paper 13). Moreover, LFM's
expert disclosure for Monica Dodi stated she would testify about
the "market value" of LFM's CYOA rights. See Opp'n to Motion for
Summ. J. (Paper 111-6). That disclosure was dated May 14, 2008.
Chooseco deposed Ms. Dodi on July 15, 2008. Thus, Chooseco's
claim that LFM offers this theory "only after discovery and
depositions have been completed at great expense" rings a bit

hollow.  Indeed, Chooseco's line of questioning during Dodi's
deposition suggests Chooseco was on notice of LFM's lost market
value theory.  (Paper 111-4 at 14.)  ("[T]here seem to be . . .
two different components to this:  One is you [Dodi] state a
market value of $2-4 million, and the other is that – the profits
that Lean Forward would likely have been able to generate had
they been permitted to exploit the rights.")  Therefore, Chooseco
has not shown prejudice.  The Court finds LFM has sufficiently
pleaded its lost market value damages.

    2.   <u>Dodi's Expert Qualifications</u>

Chooseco next argues LFM's damages claims fail because LFM's
expert testimony from Monica Dodi must be excluded.  The burden
of establishing the admissibility of proffered expert testimony
weighs on the proponent of that testimony. See <u>Humphrey v.
Diamant Boart, Inc.</u>, 556 F. Supp. 2d 167, 174 (E.D.N.Y. 2008)
(collecting authority).  Expert testimony is admissible under
Federal Rule of Evidence 702 if (1) the evidence is relevant; (2)
the expert is qualified; and (3) the expert's testimony rests on
a reliable foundation.  <u>Nimely v. City of New York</u>, 414 F.3d 381,
395 (2d Cir. 2005).  Chooseco argues Dodi's testimony should be
excluded because Dodi is not qualified and because her testimony
is unreliable.

Rule 702 requires an expert be qualified "by knowledge,
skill, experience, training or education."  Fed. R. Evid. 702.

While courts look to the totality of the expert's qualifications, any one of these five qualifications may satisfy the rule. Greater Northern Ins. Co. v. Power Cooling, Inc., 2007 WL 4688411, *13 (E.D.N.Y. 2007) (internal citation omitted). Chooseco argues although Dodi has substantive experience in evaluating the potential of start-up companies for investment purposes, she is not an economist or an accountant qualified to assess lost market value damages.

The Court finds Dodi's background and practical experience qualify as "specialized knowledge" gained through "experience, training, or education." Fed. R. Evid. 702. Ms. Dodi graduated from Georgetown University with a degree in International Economics in 1977 and received a Master's in Business Administration from Harvard Business School in 1984. Since that time, Ms. Dodi has worked in the entertainment field and developed considerable expertise valuing companies and their rights. Chooseco's objections to Ms. Dodi's qualifications go to the weight of her testimony and not its admissibility.

3.   Reliability of Dodi's Expert Testimony

An expert's testimony must also "be the product of reliable principles and methods" in order to be admissible. Fed. R. Evid. 702. In determining whether expert testimony is reliable, the Supreme Court in Daubert identified a list of factors district courts may consider, including: (1) whether a theory or technique

can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence or maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-94 (1993).

Chooseco's Motion for Summary Judgment disputes Dodi's method for calculating lost profits.  LFM has established, however, it seeks lost market value damages, not lost profits. Chooseco's reply memorandum then raised a reliability issue with Dodi's technique for calculating the lost market value of LFM's CYOA rights.  Chooseco argues Dodi's technique is not generally accepted.  In her deposition, Dodi testified she based her assessment of the license's value on her experience.  Chooseco, citing its own expert's deposition testimony, contends a reliable lost market value calculation must consider comparables.  Reply in Supp. of Mot. for Summ. J. at 5 (Paper 115).

LFM relies on Schonfeld v. Hilliard to support its lost market value claim.  218 F.3d 164 (2d Cir. 2000)  In Schonfeld, the court outlined competent evidence of lost market value damages.  The court explained, "[a]lthough it is easier to determine an asset's market value when it is actively traded on a standardized exchange or commodities market, an asset does not

6

lose its value simply because no such market exists." Id. at
178. "If, fortunately, the asset at issue has a sales history,
then despite the lack of a traditional market, it is easier for
the court to determine the asset's market value as of the time it
was lost." Id. "If no prior sales history is available, experts
may give their opinion of the asset's value; and evidence of
sales of comparable assets may be introduced." Id. This language
suggests evidence of comparables is competent to prove market
value, but not necessary.

Rule 702 of the Federal Rules of Evidence specifically
provides for the receipt of expert testimony whenever it can
"assist the trier of fact to understand the evidence or to
determine a fact in issue." Dodi's report and testimony offer an
expert opinion of the asset's value, acceptable evidence under
Schonfeld. The Court finds Dodi has significant experience
valuing assets such as Chooseco's and is qualified to offer an
expert opinion. Dodi was clear about her method in her
deposition. Her opinion is based on a calculation of LFM's
projected fifth year EBITDA (Earnings Before Interest, Taxes,
Depreciation and Amoritization) and her professional judgment.
"To the extent [Dodi] may have departed from general valuation
practices . . . or adopted procedures subject to criticism,
[Chooseco has] ample opportunity to elicit these facts and argue

them to the jury." <u>Enercomp, Inc. v. McCorhill Publ'g, Inc.</u>, 873

F.2d 536, 550 (2d Cir. 1989).

### 4. Rule 26(a)(2)(B) Requirements

Chooseco argues Dodi's report doesn't meet the minimum

standards set forth in Federal Rule of Civil Procedure

26(a)(2)(B).  Under Rule 26, expert reports must contain:

> "(i) a complete statement of all opinions the witness
> will express and the basis and reasons for them; (ii)
> the data or other information considered by the witness
> in forming them; (iii) any exhibits that will be used
> to summarize or support them; (iv) the witness's
> qualifications, including a list of all publications
> authored in the previous 10 years; (v) a list of all
> other cases in which, during the previous four years,
> the witness testified as an expert at trial or by
> deposition; and (vi) a statement of the compensation to
> be paid for the study and testimony in the case."

Chooseco contends the report should be precluded under Rule

37(c)(1)'s automatic sanction for Rule 26(a)(2)(B) violations.

Federal Rule of Civil Procedure 37 ("If a party fails to provide

information . . . as required by Rule 26(a) . . . the party is

not allowed to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless.")  Chooseco has not shown

prejudice from any alleged deficiencies in Dodi's report.

Chooseco had ample opportunity to (and did in fact) carefully

probe the basis and methodology of Dodi's expert testimony during

her deposition.  Because the Court finds no prejudice, Chooseco's

request for sanctions is denied.

### 5. LFM CEO Michelle Crames' Testimony

LFM also seeks to introduce the testimony of its CEO, Michelle Crames, on the value of the license. Under Schonfeld, an asset's owner may testify to its market value only "[i]f he is sufficiently qualified." Schonfeld, 218 F.3d at 178. LFM argues Michelle Crames is qualified as a matter of law. Under 12 V.S.A. § 1604, "[t]he owner of real or personal property shall be a competent witness to testify as to the value thereof." Chooseco claims LFM does not own the rights at issue, because "[b]y definition, a license does not provide the licensee with ownership rights" in the underlying trademark. Chooseco claims it retained ownership of the license. (Paper 115 at 7.)

The Court takes no position at this time on whether LFM owns the rights for purposes of 12 V.S.A. § 1604. LFM provided no facts or argument supporting Crames' qualifications to testify about the value of the rights, under Vermont law or otherwise. The Court will hear evidence on this issue, and make a determination as to Ms. Crames' qualifications, if and when LFM seeks to introduce her testimony at trial.

### 6. Sufficient Proof of Lost Market Value

Chooseco next argues even if LFM's damages claims are timely and Dodi's expert opinion is admissible, there is insufficient evidence to survive the motion for summary judgment. Under Schonfeld, the plaintiff's evidence for lost market value damages

must show two things.  First, "as with all consequential damages, a plaintiff must prove that liability for the loss of the asset was within the contemplation of the parties at the time the contract was made."  Schonfeld, 218 F.3d at 177.  Next, the plaintiff must prove the market value of the asset with reasonable certainty.  Id.

Chooseco argues the parties did not contemplate LFM would sell its rights under the license and claims "the focus of the Agreement" was LFM's "right to make products."  (Paper 115 at 5.) Chooseco also points to Crames' affidavit, in which she stated LFM believed "it would hold the licensed rights in perpetuity." Michelle Crames Aff. ¶ 5.

The Court notes, however, the Agreement contemplates LFM transferring its rights.  Provision 6(f) references LFM sublicensing its CYOA license.  Provision 10 provides for LFM to assign its rights under the license with Chooseco's approval. Any sublicense or assignment of rights would presumably be for value, which is arguably a sale of the rights.  Therefore, the Court finds inappropriate summary judgment against LFM on this issue.

Chooseco makes a related claim that LFM could not sell its slice of CYOA rights independently of those held by Chooseco. (Paper 115 at 6.)  Assuming, arguendo, this allegation is true, it does not mean LFM could not possibly sell its rights.  Indeed,

LFM alleges Crames facilitated a meeting between Color Force head Nina Jacobson and Chooseco to discuss Color Force acquiring both LFM and Chooseco's rights as a bundle. (Paper 13 ¶¶ 26, 27.) The Court therefore denies summary judgment in favor of Chooseco on this issue.

### 7. Reliance Damages

Finally, Chooseco argues LFM may not recover reliance damages. Chooseco first claims reliance damages are consequential or special damages, and therefore must be specially pled. (Paper 115 at 8.) Reliance damages are not necessarily special damages. Reliance damages may "merely restore to the claimant what he or she spent before [an] opportunity was withdrawn . . . ." DPJ Co. Ltd. P'ship v. F.D.I.C., 30 F.3d 247, 249-50 (1st Cir. 1994). Such damages are "actual direct compensatory damages." Id. at 250. Black's Law Dictionary explains, "Compensatory or actual damages consist of both general and special damages." BLACKS LAW DICTIONARY 390 (6th ed. 1990). Chooseco did not present the Court with information showing LFM's claims are only for special damages. Without more information, summary judgment against LFM on this issue is inappropriate.

Chooseco next argues reliance damages are not available because LFM "cannot show that it would have at least covered its expenses but for a breach by Chooseco." (Paper 115 at 9.) Essentially, Chooseco claims the burden is on LFM to prove it was

11

not in a losing contract before asserting reliance damages.  The
Court disagrees.  The burden is on Chooseco to prove LFM was in a
losing contract.  See RESTATEMENT (SECOND) OF CONTRACTS § 349 (1981)
("[The injured party] may choose to [ignore the element of profit
and recover as damages his expenditures in reliance] in the case
of a losing contract . . . .  In that case, however, it is open
to the party in breach to prove the amount of the loss, to the
extent that he can do so with reasonable certainty under the
standard stated in § 352, and have it subtracted from the injured
party's damages") (emphasis added); see also AM. JUR. Damages §
53 ("The burden is placed on the defendant to show that
performance would have resulted in a net loss to the
plaintiff."); Bausch & Lomb Inc. v. Bressler, 977 F.2d 720, 729
(2d Cir. 1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 349
(1979)) ("[A] reliance recovery will be offset by the amount of
'any loss that the party in breach can prove with reasonable
certainty the injured party would have suffered had the contract
been fully performed.'").  Therefore, summary judgment against
LFM on the issue of reliance damages is denied.

    B.  <u>Motion to Strike</u>

        1.  <u>Motion to Strike Crames' Unsworn Affidavit</u>

Chooseco moves to strike Michelle Crames' affidavit because
it is unsworn and unsigned.  LFM has since filed an executed and
notarized affidavit.  The motion to strike is denied as moot.

### 2.  Motion to Strike Hearsay from Crames' Deposition

Chooseco moves to strike portions of Michelle Crames' deposition testimony because it contains inadmissible hearsay. In particular, Chooseco refers to Crames' testimony citing the value other entities attributed to LFM's CYOA rights.  In Section A(5), supra, the Court decided not to admit Ms. Crames' testimony on the issue of damages because her qualifications to testify were not established.  The Court, therefore, denies Chooseco's motion to strike as moot; however, Chooseco may renew this motion should LFM seek to introduce Ms. Crames' testimony.

### 3.  Motion to Strike Speculation from Crames' Affidavit

Chooseco moves to strike paragraph 5 of Ms. Crames' affidavit because it "contains inadmissible speculation and lacks foundation."  The offending language states, "[b]oth LFM and Chooseco believed that our relationship would continue for many, many years to come.  Both parties contemplated that the license would be extended, which is why LFM sought future caps on future royalty payments in the original Agreement."  Michelle Crames Aff. ¶ 5.  Chooseco contends Ms. Crames cannot purport to have personal knowledge of what Chooseco believed when that information is not in the record.

Under Vermont law, a witness is competent to give testimony about the intent of others only when the proponent of the testimony introduces evidence "sufficient to support a finding

that [the witness had] personal knowledge as to the intent of the other parties." Bemis v. Lamb, 135 Vt. 618, 622, 383 A.2d 614, 618 (1978). LFM introduced no such evidence other than the contract itself, which LFM claims "provides ample evidence of the parties' understanding." (Paper 119 at 2.) The Court disagrees. Therefore, the Court grants Chooseco's motion to strike the following language from paragraph five: "Both LFM and Chooseco believed that our relationship would continue for many, many years to come. Both parties contemplated that the license would be extended."

### 4. Motion to Strike Portions of LFM's Response

Chooseco seeks to strike statements from LFM's response memorandum referring to valuations of LFM's rights by Carrot Capital and William Morris agency. These statements are based on Michelle Crames' testimony, which, as explained in Section A(5), supra, the Court did not consider for purposes of evaluating Chooseco's motion for summary judgment. Therefore, the motion to strike is denied as moot.

## III. Conclusion

Accordingly, Chooseco's Motion for Summary Judgment dismissing LFM's counterclaims (Paper 103) is DENIED. Chooseco's Motion to Exclude Michelle Crames' testimony as evidence on the market value of LFM's CYOA rights (Paper 103) is GRANTED.

Chooseco's Motion to Strike (Paper 114) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 13th day of January, 2009.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge